# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL S. WILSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.   15-cv-1320-MJR-SCW** |
| ) | |
| **JASON GARNETT,** ) | |
| **NANCY TAYLOR,** ) | |
| **MARK HOWELL, and** ) | |
| **WINNIFRED BRADDOCK,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### INTRODUCTION

Pursuant to **42 U.S.C. § 1983**, *pro se* Plaintiff Michael S. Wilson, currently

incarcerated at Lawrence Correctional Center, brought this claim against Defendants

Winnifred Braddock, Nancy Taylor, and Mark Howell for interference with his mail and

retaliation while he was housed at Big Muddy Correctional Center.[1]   Jason Garnett,

warden of Big Muddy Correctional Center, was added to the case in his official capacity

for purposes of implementing any injunctive relief that Plaintiff was awarded.   This

---

[1] Defendants were originally identified in Plaintiff's complaint as unknown mailroom staff (Docs. 1 and 10).   Plaintiff later identified the mailroom staff as N. Taylor, M. Howell, and W. Braddock (Docs. 18 and 27) and they were substituted for the John Doe mailroom staff.   Defendants identified themselves by their formal names in their answer to the complaint (Doc. 34).   As such, the Court **DIRECTS** the Clerk to substitute N. Taylor, M. Howell, and W. Braddock on the docket for their formal names, Nancy Taylor, Mark Howell, and Winnifred Braddock.

matter is before the Court on a motion for summary judgment filed by Mark Howe, Nancy Taylor, and Winnifred Braddock (Docs. 56 and 57). Plaintiff has filed a response (Doc. 63) in opposition to the motion. After thoroughly reviewing the evidence and motions the Court **GRANTS** Defendants' motion for summary judgment.

FACTUAL BACKGROUND

The events which give rise to Plaintiff's claims took place while he was housed at Big Muddy Correctional Center. Defendants Mark Howe, Nancy Taylor, and Winnifred Braddock worked in the mailroom at Big Muddy Correctional Center (Doc. 57-1, p. 1, 7, and 16).

Plaintiff testified that he first tried to send out non-legal mail that had the "date sent" written on the outside of the envelope (Doc. 57-1, p. 24). Plaintiff testified that the mailroom staff refused to send the letters out due to the extra writing on the envelope (*Id*. at p. 24, 26). Plaintiff spoke with internal affairs and he was allowed to send out the envelopes he already had written the date on, but was informed that he needed to leave off any excess writing on future envelopes (*Id*.). At Big Muddy Correctional Center, outgoing envelopes can only include three types of writing on the envelope: (1) the name and address of the recipient, (2) the name, inmate number, and address of the sender, and (3) the designation of "legal" or "privileged" (if applicable) (Doc. 57-1, p. 1, 6, and 16). The policy was implemented in response to inmates using pre-stamped legal mail for non-legal purposes by covering the "legal" designation with writings and artwork (*Id*.). Envelopes with additional writing that violates the policy are returned to the

inmate (*Id*.).

Plaintiff also sought to send a notice of change of address to this Court in one of his pending cases on November 28, 2014, but the mailroom staff returned the outgoing mail (Doc. 57-1, p. 25, 33, 41).  Plaintiff testified that he first tried to file the notice through the Court's e-filing system, but the power was out at Big Muddy and the law library could not e-file the notice (Doc. 57-1, p. 26, 34-35).   Plaintiff then tried to send the notice as legal mail addressed to the Court, but the mailroom sent the notice back to Plaintiff informing him that all federal court materials had to be e-filed (*Id*. at p. 26, 33). Plaintiff believes that the notice was returned to him on December 2, 2014 (*Id*. at p. 33).

Defendants testified that on March 25, 2011, they received Warden's Bulletin 11-016 which indicated that inmate filings to the U.S. District Court for the Southern District of Illinois were to be made electronically and that the program was not voluntary (Doc. 57-1, p. 2, 7, and 17; *see also* Doc. 57-1, p. 12).   The Bulletin specifically indicated that "[i]t is the Court's expressed desire that all court filings to the U.S. District Court – Central and Southern District offices will be transmitted via the digital scanner" (Doc. 57-1, p. 12).   Any document received by the mailroom for filing with the district court after the date of the bulletin was returned with directions to electronically file the document through the law library (Doc. 57-1, p. 2, 7, and 17).   Big Muddy Correctional Center later received a clarification from the district court on January 5, 2016, that indicated inmate filers may, but are not required to, use the electronic filing system and that they may mail documents to the Court as an alternative to filing electronically (Doc.

57-1, p. 14-15).

Plaintiff testified that he did not worry about his notice not being mailed as he was transferred to Illinois River on a writ and could send it there (Doc. 57-1 p. 34). Plaintiff sent the notice as soon as he got to Illinois River within a day or two of getting the notice back from the mailroom (*Id.*). Plaintiff testified that there were other times that he tried to send items to the Court by mail and he was told to e-file the documents, but he was able to e-file those documents through the law library (Doc. 57-1, p. 35). Plaintiff testified this was the only time that he could not e-file the document because the power was out (*Id.*).

Plaintiff also testified that he sent a notice to the warden which was returned to him by the mailroom. Plaintiff testified that he tried to submit a notice of intent to sue to the warden (Doc. 57-1, p. 35). The envelope was sealed as legal mail (*Id.*). Plaintiff acknowledged that the Big Muddy orientation manual indicated that an inmate could send sealed communications to the warden regarding the Prison Rape Elimination Act and/or allegations of sexual assault (Doc. 57-1, p. 26, 36; Doc. 57-1, p. 2, 7, and 17, Doc. 1-1, p. 25). Mailroom staff returned sealed, non-privileged mail to the warden that was unrelated to the Prison Rape Elimination Act (Doc. 57-1, p. 3, 8, and 18). Plaintiff testified that the notice was returned to him saying that it could not be sealed (Doc. 57-1, p. 36).

Plaintiff's complaint also alleges that mailroom staff improperly refused to mail letters to the Mercer County Courthouse. Plaintiff tried to submit a letter to the Mercer

County Courthouse on January 13, 2015, but he did not include a specific office within the courthouse to direct the mail (Doc. 57-1, p. 26, 40). Plaintiff attempted to send the letter as a sealed envelope inquiring about his driving record and fees owed related to a hit and run case in that county in 2000 (*Id.* at p. 40). While the mailroom returned the letter on January 14, 2015, Plaintiff was out of the prison on a writ and did not receive the letter until January 29, 2015 (*Id.*). Plaintiff added Clerk of the Court to the envelope and sent the mail back to the mailroom (*Id.*). Defendants all testified that outgoing mail to courthouses, which does not include a specific recipient outlined in the regulations, is returned to the inmate with the direction to identify the specific recipient (Doc. 57-1, p. 3, 8, and 18). The mailroom requires this information to determine if the piece of mail to the courthouse should be considered legal or privileged, and to determine the proper court office which the mail should be delivered (*Id.*).

Plaintiff's complaint also alleges that letters to the John Howard Association were improperly returned by mailroom staff. Plaintiff testified that he attempted to submit mail to the John Howard Association (Doc. 57-1, p. 25). Plaintiff indicated that he had a personal relationship with a number of individuals at the John Howard Association and that he had been working with them for six and a half years (*Id.* at p. 27). Plaintiff wrote letters to the John Howard Association about every aspect of his lawsuit (*Id.*). He informed them of everything that was going on with his lawsuits (*Id.*). However, the Big Muddy mailroom refused to send out the letters as he did not have money in his account to pay the postage (*Id.*). Plaintiff testified that all of the other institutions where

he was housed, including Illinois River, Pinckneyville, Centralia, Menard, and Stateville, would send his letters to the John Howard Association without funds, but Big Muddy refused to send the letters (*Id.* at p. 27-28).   Plaintiff testified that mailroom staff told him that privileged mail is not to be sent if an inmate does not have funds (*Id.* at p. 41).   But Plaintiff testified that he sent hundreds of documents to John Howard previously without having any funds to pay for postage (*Id.* at p. 41, 42).   He first received notice from Big Muddy that they would not mail his letters to the John Howard Association without funds on November 7, 2015 (*Id.* at p. 41).   He was informed that because the letter was privileged, but not considered legal mail, he would have to have funds in his trust fund account to send the letter (*Id.* at p. 42).   Defendants testified that while letters to the John Howard Association from inmates are considered privileged, the inmate must have sufficient funds in their account to purchase postage for privileged mail (Doc. 57-1, p. 3-4, 8-9, 18-19).   If an inmate does not have sufficient funds for postage, the mail is returned (*Id.* at p. 4, 9, and 19).

Plaintiff's complaint also alleges that he attempted to send mail to the Department of Child and Family Services ("DCFS"), court appointed special advocates ("CASA"), and witnesses in his state custody case, but that the mailroom improperly refused to send out the documents.   Plaintiff had a custody case pending in state court involving his child, including visitation rights and his child's welfare (Doc. 57-1, p. 30). The Court required Plaintiff to serve his filings on every party in the case.   There were nine parties in the case including DCFS and CASA (Doc. 57-1, p. 29).   Plaintiff testified

that five of those parties were covered by the legal mail rule, as they were attorneys, and Big Muddy sent his documents to those individuals (*Id*.). However, Big Muddy considered documents sent to CASA and DCFS to be personal mail and would not send the documents as Plaintiff did not have any funds to cover postage (*Id*.). Plaintiff testified that during his previous incarceration at Pinckneyville Correctional Center his letters were sent to CASA and DCFS as legal mail, but Big Muddy would not send his documents to DCFS and CASA (*Id*.). Plaintiff testified that the child's mother was ultimately awarded full custody (*Id*. at p. 30). Defendants testified that mail to DCFS, CASA, and witnesses in civil cases do not constitute legal or privileged mail under IDOC regulations (Doc. 57-1, p. 4, 9, and 19). Thus, an inmate has to have sufficient funds for postage in order for those documents to be sent (*Id*.).

Finally, Plaintiff's complaint also alleges that Defendants retaliated against him for filing grievances. Plaintiff testified that every time that he tried to send mail with a stamp that an inmate would get from the commissary he would be investigated by internal affairs (Doc. 57-1, p. 37). Plaintiff testified in his affidavit, submitted as an attachment to his responsive brief, that he was sent to internal affairs on two occasions (Doc. 63, p. 12). Plaintiff acknowledged that because he did not have funds he would have to traffic and trade, and break a prison rule, in order to obtain a stamped envelope (Doc. 57-1, p. 37). Plaintiff testified that he would do somebody's laundry or trade something off of his tray in order to get an envelope (*Id*.). However, when he turned in a stamped envelope which he had traded for, he would be confronted by internal affairs

the next day (*Id*.). Plaintiff believed that the mailroom was giving internal affairs his name and that it was none of the mailroom's business as to where he obtained his funds for an envelope (*Id*. at p. 37-38). Plaintiff believed that the funds were within the purview of the business office only; thus, any time the mailroom turned Plaintiff in to internal affairs, Plaintiff believed it was an act of retaliation for Plaintiff complaining about the mailroom's actions (*Id*. at p. 38, 43). Plaintiff admitted that he was supposed to buy stamped envelopes in the commissary, but he stopped shopping at the commissary in December 2013; instead he traded food or laundry for the postage (*Id*.). Plaintiff acknowledged that while legal mail gets sent out regardless of whether an inmate has funds, personal letters require money from the inmate's trust fund (*Id*. at p. 39). Plaintiff was sent to segregation for a ticket that he received from Lieutenant Clark on November 5, 2016, for having another inmate's materials in his box and for trafficking and trading (*Id*. at p. 39; Doc. 57-1, p. 54). Plaintiff believes that the mailroom was responsible for the ticket (*Id*.).

Defendants testified that trading and trafficking in envelopes is a violation of prison rules (Doc. 57-1, p. 4-5, 8-9, 18-19). Defendants testified that if an inmate without funds tried to send out a non-legal envelope, that was only available for purchase from the commissary, it was likely that the inmate had received the envelope through trading and trafficking other items (*Id*.). When mailroom staff received envelopes that they suspected had been the product of trading and trafficking, that information was reported to internal affairs (*Id*.). It was then up to internal affairs to investigate and the

mailroom had no further involvement in the issue (*Id.*). Michael Clark, a lieutenant in internal affairs at Big Muddy Correctional Center, testified that he issued a disciplinary ticket to Plaintiff on November 5, 2016, for a number of violations, including a violation for trading or trafficking (Doc. 57-1, p. 54). Clark testified that the ticket was issued as part of a routine cell search and not the result of any report from the mailroom staff (*Id.*). While Plaintiff had three other previous disciplinary tickets, the November 5, 2016 ticket was the only ticket related to mail issues (*Id.* at p. 54-55).

<h2 style="text-align:center">LEGAL STANDARDS</h2>

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs summary judgment motions. Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV. P. 56(a))**. The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. After a properly supported motion for summary judgment is filed, the adverse party "must set forth facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56).**

A genuine issue of material fact remains "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.* **at 248**. *Accord Bunn v. Khoury*

*Enterpr. Inc.***, 753 F.3d 676 (7th Cir. 2014)**.   The Seventh Circuit recently reiterated:

> As the "'put up or shut up'" moment in a lawsuit," summary judgment
> requires a non-moving party to respond to the moving party's
> properly-supported motion by identifying specific, admissible evidence
> showing that there is a genuine dispute of material fact for trial.

*Grant v. Trustees of Indiana University,* **870 F.3d 562, 568 (7th Cir. 2017) (quoting**

*Harney v. Speedway SuperAmerica, LLC,* **526 F.3d 1099, 1104 (7th Cir. 2008), and**

*Johnson v. Cambridge Indus., Inc.,* **325 F.3d 892, 901 (7th Cir. 2003)).**   Such a dispute

exists if there is "sufficient evidence favoring the non-moving party to permit a trier of

fact" to reasonably find in favor of the non-movant as to any issue on which the

non-movant bears the burden of proof.   *Grant***, 870 F.3d at 562.**

    In assessing a summary judgment motion, the court construes all facts and

reasonable inferences in the light most favorable to the non-moving party.   *Zuppardi v.*

*Wal-Mart Stores, Inc.***, 770 F.3d 644, 649 (7th Cir. 2014);** *Ferraro v. Hewlett-Packard Co.,*

**721 F.3d 842, 847 (7th Cir. 2013).**   The court may not choose between competing

inferences or balance the relative weight of conflicting evidence, it should view all the

proper evidence in the record in the light most favorable to the non-movant.   *Reid v.*

*Neighborhood Assistance Corp. of America,* **749 F.3d 581, 586 (7th Cir. 2014).**   However,

to survive summary judgment, the non-movant must present more than "bare

speculation or a scintilla of evidence."   *Zuppardi***, 770 F.3d at 650,** *quoting Roger*

*Whitmore's Auto. Services, Inc., v. Lake County, Ill.,* **424 F.3d 659, 669 (7th Cir. 2005).**

**B. Interference with Mail**

Inmates have a First Amendment right to send and receive legal mail. *Kaufman v. McCaughtry*, **419 F.3d 678, 685 (7th Cir. 2005) (citing** *Rowe v. Shake*, **196 F.3d 778, 782 (7th Cir. 1999)).** The Seventh Circuit is particularly concerned about regulation or practices that affect legal mail because such interferences could impede a prisoner's right of access to the courts. *Rowe*, **196 F.3d at 782 (citing** *Lewis v. Casey*, **518 U.S. 343 (1996)).** "[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." *Kaufman*, **419 F.3d at 685-86 (citing** *Wolff v. McDonnell*, **418 U.S. 539, 577 (1974);** *Castillo v. Cook County Mail Room Dep't*, **990 F.2d 304, 305-06 (7th Cir. 1993)).** However, regulations or practices which deny a prisoner access to non-legal mail can also implicate the First Amendment and must be tailored to a legitimate penological interest. *Rowe*, **196 F.3d at 782.**

**C. Retaliation**

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights. *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000).** Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection

between the two.  *See also Watkins v. Kasper*, **599 F.3d 791, 794 (7th Cir. 2010); *Bridges***

***v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).**    A defendant can still prevail, however, if he

shows that the offending action would have happened even if there had been no

retaliatory motive, i.e. "the harm would have occurred anyway."  *Mays v. Springborn*,

**719 F.3d 631, 634-35 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 977-80 (7th Cir. 2011).**

At summary judgment, "mere speculation" by the plaintiff is insufficient to carry his

burden.  *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, **544 F.3d**

**752, 757 (7th Cir. 2008); *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013).**

ANALYSIS

### A.  Excess Writing on Envelopes

Defendants first argue that they are entitled to summary judgment on Plaintiff's

claim that rejecting his mail for excess writing on the envelopes violated his First

Amendment rights.   Defendants argue that the policy rejecting such envelopes served a

legitimate penological interest.  Big Muddy implemented a policy on November 15,

2010, which required that outgoing mail envelopes include only the following

information: (a) name and address of the recipient, (b) name, inmate number, and

address of the sender, and (c) designation of "legal" or "privileged" if applicable.

Defendants testified that this policy was implemented uniformly to all inmates and was

a response to inmates trying to use pre-stamped legal envelopes for non-legal purposes

by placing excessive writing on and around the "legal" designation.

"Prison officials may…impose restrictions on prisoner correspondence if those

restrictions are 'reasonably related to legitimate penological interests.'" ***Van den Bosch v. Raemisch***, **658 F.3d 778, 785 (7th Cir. 2011) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).** To determine whether such regulations are valid, the Court must look at four factors: "(1) whether there is a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; (2) whether the inmates have access to 'alternative means' of exercising the restricted right; (3) the 'impact [an] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and whether the regulation is an 'exaggerated response to prison concerns.'" ***Id.*** **(quoting *Turner*, 482 U.S. at 89-91).**

The Court finds that Defendants have a legitimate penological interest in determining that mail sent with a "legal" designation is appropriately designated in order to be mailed at the State's expense. Prison authorities may make "a reasonable attempt to balance the right of prisoners to use the mail[ ] with prison budgetary considerations." ***Bach v. Coughlin*, 508 F.2d 303, 307–08 (7th Cir. 1974).** Here, the policy was implemented in response to inmates trying to abuse the free, pre-stamped legal envelopes system in order to send out non-legal mail free of charge. As Defendants point out, the policy was uniformly applied to all inmates. Additionally, the regulation was not content-based; instead, it rejected mail being sent out by inmates that had excessive writing on the outside, regardless of the content of those letters. ***See Rowe*, 196 F.3d at 782 (short-term, non-content based disruption in delivery does not violate**

the constitution) (citing *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987)). Further, Plaintiff had alternative means of sending out mail by obtaining non-legal envelopes to mail out or by submitting legal envelopes with no additional writing on the envelope. Plaintiff also testified that he was even allowed to send out the envelopes he already had in his possession with excess writing on them and was directed to comply with the policy in the future.

Plaintiff, on the other hand, fails to offer any evidence to rebut the stated penological interest. ***Van den Bosch*, 658 F.3d at 786 (burden to disprove validity lies with the inmate (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).** Plaintiff's only argument is that the regulation was not uniform as the policy did not exist at other prisons where Plaintiff was housed, including Centralia Correctional Center, Pinckneyville Correctional Center, and Illinois River Correctional Center (Doc. 63, p. 2, 11). However, Defendants do not argue that the policy was located at every prison, but was a policy implemented by the warden of Big Muddy in 2010 in response to inmates' at *that* prison's misuse of free, pre-stamped legal mail envelopes. The Court finds no evidence to demonstrate that the policy was not tailored to a legitimate penological interest at Big Muddy Correctional Center. As such, the Court finds that Defendants are entitled to summary judgment on this claim.

### B. Southern District Filing

Plaintiff's complaint also alleges that Defendants improperly interfered with his mail when they refused to send a notice of change of address to this Court in one of

Plaintiff's pending civil cases. Defendants do not deny that they refused to mail the notice, instead informing Plaintiff that he needed to e-file the document. This appears to be due to some confusion on Big Muddy Correctional Center's part as to the requirements of this Court's e-filing program with IDOC. Based on this program, the acting warden of Big Muddy issued a bulletin informing staff that all correspondence to the Court had to be submitted by the inmates through the e-filing system (Doc. 57-1, p. 12). The warden informed staff that "[p]articipation in this program IS NOT VOLUNTARY" (*Id*.). This Court has since clarified the program with IDOC, noting that inmates are not required to utilize the e-filing system and that filings can be sent by U.S. mail (Doc. 57-1, p. 14). Defendants testified in their affidavits that the policy of e-filing all documents with the Court, rather than mailing them, was based on the mistaken belief that the Court wanted all documents e-filed and was a policy that was applied to all inmates, not just Plaintiff.

While the policy adopted by Big Muddy was an incorrect application of the Court's e-filing program, Plaintiff has only identified one occasion where his filings were returned and he was not able to e-file. Plaintiff's November 28, 2014 notice was returned to Plaintiff because of the prison's policy of e-filing all court documents. Even though Plaintiff was unable to e-file the notice of change of address that day due to a power outage, he was able to e-file the notice a day or two later when he transferred to Illinois River. While Plaintiff testified that other documents addressed to this Court were returned, he was able to e-file those documents the same day as the e-filing system

was available.   It was only the November 28, 2014 notice that he was unable to e-file or mail from Big Muddy.   However, only ongoing interference with legal mail violates a prisoner's rights.   ***Rowe*** **196 F.3d at 782-83 (citing *Castillo*, 990 F.2d 304).**   Relatively short-term and sporadic delay in delivering mail does not.   ***Id.* at 782; *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).**   Here, Plaintiff only points to one occasion where his Court filing was refused by the mailroom.   Plaintiff was ultimately able to e-file the document the next day and, as the Court noted in its threshold order, the short delay in submitting the notice had no effect on his federal lawsuit.   As such, the Court finds that Defendants are entitled to summary judgment on this claim.

### C.  Sealed Notice to Warden

As to Plaintiff's sealed notice to the warden of Big Muddy Correctional Center, the Court also finds no evidence of interference with Plaintiff's mail.   Plaintiff testified that he attempted to submit a sealed notice of intent to sue in regards to the issues with his mail, but the mailroom sent the letter back to him because it was sealed.   Plaintiff argues that the notice was "legal" mail and privileged and should have been sent to the warden sealed rather than returned with a notice to unseal the envelope.

A notice of intent to sue sent to the warden is not considered privileged under the IDOC regulations.   As the Court stated in its threshold order, while privileged mail includes mail sent to Department Chiefs, Chiefs do not include the warden of a prison. *See* **20 Ill. Admin. Code § 525.110(g).**   Instead, the administrative code defines "Chief" as "the highest ranking official of a district or division within the Department."   **20 Ill.**

**Admin. Code § 525.110(b).**   A warden, under the administrative code, is defined as a "Chief Administrative Officer", the "highest ranking official of a correctional facility." **20 Ill. Admin Code. § 525.110(c).**   Thus, a notice addressed to the warden does not qualify as privileged mail which is allowed to be sealed.

Plaintiff also points to the Big Muddy orientation manual as a basis for sending a sealed letter to the warden (Doc. 1-1, p. 25).   However, that manual only allows letters related to the Prison Rape Elimination Act ("PREA") to be sealed and sent to the warden (*Id*.).   Plaintiff's notice to the warden, as he admits in his deposition, was not related to the Prison Rape Elimination Act or any sexual activities inside the prison.   As Plaintiff's notice to the warden was not privileged, it should have been sent unsealed to the mailroom.   **20 Ill. Admin. Code § 525.130(e).**   Thus, there is no evidence to suggest that Defendants improperly interfered with his mail by returning the sealed notice.

Further, as Defendants point out, Plaintiff was not denied the ability to send the notice to the warden as he could have resubmitted the envelope unsealed to the mailroom for delivery.   There is no indication that Plaintiff tried to resubmit the notice nor is there any evidence that he was prevented from doing so.   As such, the Court finds that Defendants are entitled to summary judgment on this claim.

### D.  Mercer County Courthouse Filing

Defendants also argue that they are entitled to summary judgment as to the letter to the Mercer County Courthouse which Plaintiff was required to re-address.   Plaintiff sought to submit a letter to the Mercer County Courthouse on January 13, 2015,

inquiring about his hit and run case.  The mailroom returned the letter on January 14, 2015 with an indication that he needed to address the envelope to a specific office.

Defendants testified that this requirement allows mailroom staff to determine whether a letter is considered legal or privileged.  "Legal mail" are those pieces of mail which are directed to attorneys, State's Attorneys, the Illinois Attorney General, judges or magistrate judges in any court, and any other organization that provides direct legal representation to inmates**.  20 Ill. Admin. Code § 525.110(h).**  Such mail may be sent despite an inmate not having sufficient funds in his trust fund account.  **20 Ill. Admin. Code § 525.130(a).**  However, mail merely defined as privileged can only be sent at the inmate's own expense.  *Id.*  In requiring Plaintiff to re-address the envelope to indicate where he was directing his letter, Defendants argue that they were seeking to serve a legitimate penological interest in determining whether Plaintiff was required to pay for the postage from his inmate trust fund.  If Plaintiff was submitting the document to a lawyer or judge, he could do so despite being indigent.  Further, if he was submitting the document to the Clerk of Court, the prison would also permit Plaintiff to send reasonable amounts of such mail at the State's expense.  *See* **20 Ill. Admin. Code § 525.130(a).**  Any other mail would have to be sent at Plaintiff's own expense.  *Id.* Without the proper address, as Defendants point out, they were unable to determine whether the mail should be sent despite Plaintiff having insufficient funds.

In any event, Plaintiff ultimately re-addressed the envelope to reflect that he wanted to letter sent to the Clerk of Court in Mercer County and the mailroom sent the

letter to Mercer County. Plaintiff testified that the letter was delayed in reaching Mercer County due to Defendants' actions, but the evidence before the Court indicates that the delay was a short one. Defendants returned the letter to Plaintiff the day after he submitted the letter for mailing, although Plaintiff did not receive the letter until fifteen days later when he returned to Big Muddy from a writ. He then re-addressed the envelope and sent it back to the mailroom, resulting in a delay of fifteen to seventeen days according to Plaintiff (Doc. 57-1, p. 40). The delay did not affect any pending case as Plaintiff was merely inquiring about his driving history and a hit and run case from 2000 (Doc. 57-1, p. 40). The Court finds this short, isolated delay in sending a letter to Mercer County did not amount to an interference with Plaintiff's right to send mail.

### E. John Howard Association

Defendants are also entitled to summary judgment on Plaintiff's claim that they refused to send his letters to the John Howard Association because he did lacked sufficient funds. Inmates do not have the right to unlimited postage. *Gaines v. Lane*, **790 F.2d 1299, 1308 (7th Cir. 1986).** IDOC regulations allows reasonable amounts of legal mail and mail to clerks of court, certified court reporters, the Administrative Review Board, and to the Prisoner Review Board to be sent, if an inmate has insufficient funds, at the State's expense. **20 Ill. Admin. Code § 525.130(a).** However, all other privileged and non-privileged letters are sent at an inmate's own expense. *Id.* The John Howard Association, although considered privileged under IDOC regulations, does not qualify as legal mail, nor is it one of the stated organizations which an inmate

may send at the expense of the State if he lacks sufficient funds. **20 Ill. Admin. Code §**
**525.110(g).**   As Plaintiff did not have sufficient funds in his account, Defendants' refusal
to send out Plaintiff's letters to the John Howard Association did not violate his First
Amendment right to send mail.

### F.  DCFS Civil Case

Similarly, Defendants' refusal to send Plaintiff's filings to DCFS, CASA, and civil
witnesses in his state custody case did not violate Plaintiff's right to send mail.   Plaintiff
testified that he was allowed to send his court filings to the state court and to all
attorneys in the case.   However, he was not allowed to send the filings to DCFS, CASA,
or his reported witnesses (although he does not identify who those witnesses were).
Neither the organizations nor the witnesses qualify as "legal mail" under IDOC
regulations.   Nor do they qualify as the type of privileged mail which can be sent by an
inmate with insufficient funds at the State's expense.   **20 Ill. Admin. Code § 525.130(a).**
As the mail did not qualify as legal mail, Defendants did not violate Plaintiff's rights by
refusing to send out the documents due to insufficient funds.

### G.  Retaliation

Plaintiff's complaint also alleges that Defendants engaged in a campaign of
harassment in response to Plaintiff filing grievances against them (Doc. 10, p. 10).
Plaintiff testified that Defendants turned him in to internal affairs for trading and
trafficking envelopes and that Lieutenant Clark wrote a disciplinary ticket against him
on November 5, 2016.   He argues that he was not investigated for trading and

trafficking until he wrote grievances against mailroom staff. There is very little evidence of retaliation other than Plaintiff's own belief of retaliatory motive. While Plaintiff argues that he was not investigated for trading and trafficking until after he started filing grievances against the mailroom staff, there is no indication in the record as to when said investigation took place. Plaintiff only indicated he was sent to internal affairs on two occasions but does not include a date of those interviews (Doc. 63, p. 12). While Plaintiff believes this was in response to the grievances he wrote, the grievance attached to his complaint is dated February 18, 2015 (Doc. 1-1, p. 3). There is nothing in the record to indicate when, after writing the grievance, internal affairs started talking to him about trading and trafficking. Further, the disciplinary report Plaintiff received was written on November 5, 2016, nearly twenty months after Plaintiff wrote his original grievance and almost year after he filed this case. Thus, there is very little evidence of suspicious timing in the internal affairs investigation and suspicious timing alone is not indicative of retaliation. *See Kidwell v. Eisenhauer*, **679 F.3d 957, 966 (7th Cir. 2012);** *Ripberger v. Corizon, Inc.,* **773 F.3d 871, 883 (7th Cir. 2014) (***citing Stone v. City of Indianapolis Pub. Utils. Div.,* **281 F.3d 640, 644 (7th Cir. 2002);** *Sauzek v. Exxon Coal USA, Inc.,* **202 F.3d 913, 918 (7th Cir. 2000)).**

Even assuming that Plaintiff's limited evidence that internal affairs did not talk to him about trading and trafficking until after he filed a grievance establishes a causal connection, there is evidence that the actions taken by internal affairs would have happened even if there had been no retaliatory motive. Defendants testified that

indigent inmates who submit envelopes only available for purchase from the commissary are suspected of trading and trafficking and that staff regularly report those inmates to internal affairs. However, once the report is made, it is up to internal affairs to determine what additional steps to take. Plaintiff has failed to rebut this legitimate motive. In fact, Plaintiff admitted in his deposition testimony that he did, in fact, engage in trading and trafficking, which was a violation of prison rules. Plaintiff testified that he has not purchased any items from the commissary since December 2013 and that to obtain non-legal envelopes he trades food or laundry, thereby engaging in prohibited conduct. Thus, mailroom staff had a legitimate motive in turning Plaintiff over to internal affairs as he was, admittedly, engaging in trading and trafficking which was a prison violation. As there is no evidence of retaliatory motive on Defendants' part, the Court **GRANTS** summary judgment as to Defendants Nancy Taylor, Mark Howell, and Winnifred Braddock.

### H. Jason Garnett

The Court notes that Jason Garnett, as warden of Big Muddy Correctional Center, was added to the case for purposes of implementing any injunctive relief Plaintiff sought in conjunction with his claims (Doc. 10, p. 4-5). As Defendants Nancy Taylor, Mark Howell, and Winnifred Braddock have been granted summary judgment on the merits of all of Plaintiff's claims, the Court finds the request for injunctive relief **MOOT** and **DISMISSES** Jason Garnett from the case.

Defendants' pending motions to continue the trial (Doc. 70) and for additional time to submit jury instructions (Doc. 71) are hereby **DENIED as MOOT** in light of this Order.   Additionally, Defendants' Motion in Limine (Doc. 72) is hereby **DENIED as MOOT**.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment. There being no further pending claims, the Clerk is **DIRECTED** to enter judgment in favor of Nancy Taylor, Mark Howell, and Winnifred Braddock, and against Plaintiff.

**IT IS SO ORDERED**.

DATED: March 7, 2018

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**
